IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rodrick Tucker,<br>*aka Rodrick Roshad Jamaine Tucker*,<br><br>    Plaintiff,<br><br>            v.<br><br>City of Spartanburg;<br>Spartanburg City Police Department;<br>Johnathan Larson,<br><br>    Defendants.<br>_____ | Case No. 7:14-cv-00644-MGL-JDA<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 47.] Plaintiff, proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

Plaintiff filed this action on March 3, 2014, and filed an Amended Complaint on March 27, 2014. [Docs. 1, 20.] He alleges claims related to the search of his vehicle during a traffic stop. [Docs. 1, 20.] Defendants filed a motion for summary judgment on May 29, 2014. [Doc. 47.] On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to Defendants' motion. [Doc. 48.] On July 3, 2014, Plaintiff filed a response in opposition to Defendants' motion for summary judgment. [Doc. 50.] Defendants filed a reply on July 14, 2014. [Doc. 52.] Accordingly, Defendants' motion is now ripe for review.

# BACKGROUND[1]

Plaintiff filed this § 1983 action alleging an unconstitutional detainment and search of his automobile. On the evening of February 1, 2013, Plaintiff and three companions stopped at the QuikTrip on West Main Street in Spartanburg, South Carolina. [Doc. 20 ¶ 8.] While parked, Ty, the cousin of Plaintiff's friend, approached the car and tried to initiate a fight with Plaintiff. [Doc. 1 at 3.] Plaintiff grabbed a metal baton and told Ty to move away from the car. [Doc. 20 ¶ 11.] Ty stated, "you gone have to shoot me." [*Id.*] Plaintiff told the driver of the car, "Man bump him let's go." [*Id.* ¶ 12.]

During this exchange, Spartanburg City Police Officer Valentin[2] pulled up to the QuikTrip. [*Id.* ¶ 13.] Officer Valentin pulled Plaintiff's car over, drew his gun, and told everyone to exit the car. [*Id.* ¶¶ 15–16.] Plaintiff and his companions got out of the car and were placed in handcuffs. [*Id.* ¶ 16.] As Plaintiff was being placed in handcuffs, other officers arrived at the scene, including Officer Johnathan Lawson[3] ("Lawson") and his police dog, Tinka. [*Id.* ¶ 16, 22.] Plaintiff advised the officers that he was the owner of the car and that he did not consent to any search. [*Id.* ¶ 17.] The officers questioned Plaintiff and his companions about the presence of a gun in the car; all denied any knowledge of a gun. [*Id.* ¶ 18.] Lawson then retrieved Tinka from his patrol car and walked her around

---

[1] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint and Amended Complaint. [Docs. 1, 20.]

[2] Although Plaintiff refers to this officer as "Officer Valentine," Defendants' filings clarify that the officer's name is "Valentin." [Docs. 20 ¶ 13, 47-1 at 1.] Accordingly, the Court will refer to him as Officer Valentin.

[3] Plaintiff refers to this officer as "Johnathan Lawson," however, Defendants' filings make clear that his name is "Jonathan Lawson." [Docs. 20 ¶ 4, 47-1at 2.] Accordingly, the Court will refer to him as Jonathan Lawson.

to the back door on the passenger's side of Plaintiff's car. [*Id.* ¶ 22.] Lawson commanded Tinka to sit, and she obeyed. [*Id.*]. Lawson and Tinka began the open air sniff, and Tinka jumped into the open passenger's side door. [*Id.* ¶ 23.] The officers claimed Tinka alerted and proceeded to search the car, but found no illegal substances or contraband. [*Id.* ¶ 25.] Plaintiff and his companions were then released. [*Id.*]

Plaintiff claims Lawson unlawfully and falsely claimed that Tinka alerted Lawson to the presence of illegal substances in the car in order to find the alleged gun, and then Lawson made a false incident report to justify the unlawful search. [*Id.* at 5 ]. Further, Plaintiff asserts Lawson falsely and maliciously claimed that (1) Plaintiff "advised that there was something in the car," (2) trace amounts of marijuana were found in the car, (3) and Tinka "alerted to the presence of a narcotic odor." [*Id.*] Plaintiff contends the search violated his privacy interest in the interior of his car. [*Id.*] Plaintiff alleges that the Spartanburg City Police Department ("the Department") does not monitor dash cam videos. [*Id.*] Plaintiff also claims the Department's police dog policies are unjust, unconstitutional, and in violation of well-established civil rights. [*Id.* at 6.] Accordingly, Plaintiff seeks an order directing the Department to conduct a full and thorough review of its K-9 search procedures to avoid the illegal circumvention of Fourth Amendment rights; an order prohibiting Defendants from engaging in any retaliatory actions or activities against Plaintiff; an award of $200,000 for each violation alleged; actual, incidental, and consequential damages from the illegal search and detainment; and other relief as the Court deems just and equitable. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

5

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

7

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue (1) they are entitled to summary judgment because there is no evidence Plaintiff suffered a constitutional depravation; (2) the City of Spartanburg ("the City") and the Department are entitled to summary judgment because there is no evidence of an official City policy or custom that caused or allowed a constitutional depravation; (3) Lawson is entitled to summary judgment based on qualified immunity; (4) the Department is entitled to summary judgment because it is not a legal entity amenable to suit for constitutional claims; and (5) Lawson is entitled to summary judgment on the claims asserted against him in his official capacity. The Court agrees summary judgment should be granted with respect to the claims against the City and the Department but disagrees with respect to the claims against Lawson.

**The Department**

The Department is not amenable to suit in this Court as municipal police departments and bureaus are generally not considered "persons" within the meaning of § 1983. This view is in accord with the majority of federal courts that have addressed this issue. *See, e.g., United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005); *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992); *Gore v. Conway Police Dep't*, No. 9:08-1806-RBH, 2008 WL 2566985 (D.S.C. June 26, 2008); *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 163–64 (D. Conn. 2005); *Stump v. Gates*, 777 F. Supp. 808, 815–16 (D.

Colo. 1991). As the Department is not a "person" for purposes of a § 1983 civil rights action, Plaintiff has failed to state a cognizable claim against it.

**The City**

Municipalities and other local government bodies are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 689 (1978). A local government may not, however, be held liable under § 1983 solely because it employs the tort-feasor. *Id.* A plaintiff must identify a local government "policy" or "custom" that caused his injury. *Id.* at 694; *Bd. of County Comm'rs. v. Brown*, 520 U.S. 397, 402 (1997). To establish the liability of a municipality, a plaintiff must "(1) identify[ ] the specific policy or custom; (2) fairly attribute[ ] the policy and fault for its creation to the municipality; and (3) find[ ] the necessary affirmative link between identified policy or custom and specific violation." *Spell v. McDaniel*, 824 F.2d 138, 1389 (4th Cir. 1987) (internal quotation marks omitted). Here, Plaintiff fails to identify a specific policy or custom attributable to the City with respect to his claims of constitutional violations. Thus, Plaintiff also fails to allege facts establishing the necessary affirmative link between the policy or custom and the violation of Plaintiff's rights. Accordingly, the City is entitled to summary judgment.

**Lawson**

Plaintiff does not challenge the initial traffic stop. Plaintiff claims, however, that his Fourth Amendment rights were violated when Lawson pulled Tinka into the car, constituting a search without probable cause, and when the officers manually searched the car without probable cause. [Doc. 20 at 5–6.] Lawson claims that Tinka jumped into the car instinctually, which does not violate the Fourth Amendment. [Doc. 47-1 at 6.] Lawson

9

further asserts Tinka alerted twice more around the car which provided independent probable cause for the officers to search the car. [Doc. 47-2 ¶ 13.]

The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures and provides that no warrants shall be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's private security.'" *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 (1968)). "Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* at 109 (citation omitted). "Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *State v. Wright,* 706 S.E.2d 324, 327 (2011).

Here, Defendants argue the automobile exception to the warrant requirement applies. Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). However, the Supreme Court has determined it "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."

*Ornelas v. United States,* 517 U.S. 690, 696 (1996) (citations omitted). "When assessing probable cause, we must examine the facts from the standpoint of an objectively reasonable police officer, giving due weight to inferences drawn from those facts by . . . local law enforcement officers." *United States v. Kelly*, 592 F.3d 586, 591–92 (4th Cir. 2010) (internal quotation marks omitted) (alterations in original) (citations omitted).

As stated, construing the Complaint and Amended Complaint liberally, Plaintiff asserts that (1) Tinka's jumping in the car constituted a search without probable cause and (2) the officers later searched the car without probable cause. The Court will address each search in turn.

### *Tinka*

It is established that people have a reasonable expectation of privacy in the interior of their cars, although it is a lower expectation of privacy than they have with respect to their homes. *New York v. Class*, 475 U.S. 106, 114 (1986). However, a dog sniff outside the car is not a search requiring probable cause. *U.S. v. Branch,* 537 F.3d 328, 335–36 (4th Cir. 2008). Whether a dog's instinctive jumping into a car constitutes a search without probable cause has been addressed in other circuits but not by the Fourth Circuit Court of Appeals.[4] *See United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007) ("Absent police misconduct, the instinctive actions of a well trained canine do not violate the Fourth Amendment."); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) ("[A] dog's

---

[4] The Fourth Circuit has stated that when a dog jumps into a car instinctually, it is superfluous and will not render a search invalid *if* the dog previously alerted outside the car. *United States v. Mason*, 628 F.3d 123, 130 (4th Cir. 2010). In this case, Lawson asserts Tinka alerted first when she jumped into the car and then twice around the car. [Doc. 47-2 ¶¶ 10–12.] Plaintiff asserts Tinka never alerted. [Doc. 20 ¶ 23.]

instinctive actions d[o] not violate the Fourth Amendment."); *United States v. Pierce*, 622 F.3d 209, 214 (3d Cir. 2010) ("Where decisions have held that an interior sniff was unconstitutional, the courts have concluded that the officer facilitated or encouraged the dog's entry into the car." (internal quotation marks omitted)).

In this case, there is a factual dispute as to whether Lawson directed Tinka into the car or she jumped instinctually. Plaintiff has provided three affidavits indicating that Lawson directed Tinka into the car. [Docs. 50-1 ¶ 3, 50-2 ¶ 3, 50-3 ¶ 3.] On the other hand, Lawson has averred that Tinka jumped instinctually. [Doc. 47-2 ¶ 10.] Based on the dash cam video provided by the Defendants,[5] the Court is unable to conclusively state whether Lawson directed Tinka into the car. Because there is a genuine issue of material fact as to whether Lawson directed Tinka into the car, summary judgment is inappropriate with respect to this claim. As this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 800 (1982), and its progeny is inappropriate as well.

### *The Officers*

There is also a factual dispute as to whether Tinka alerted when she was outside the car. The Fourth Circuit has stated that a dog's alert to illegal substances is sufficient to create probable cause for officers to search the inside of a vehicle. *See Florida v. Royer,* 460 U.S. 491, 506 (1983) ("[A] positive result [from a dog] would have resulted in

---

[5]The dash cam video was originally provided as Plaintiff's exhibit A [Doc. 20-1.]; however, the video was blank. Because both Plaintiff and Defendants rely on the dash cam video in their briefs and/or affidavits [Docs. 20 at 5; 42 at 2], by Order dated September 8, 2014, Defendants were directed to provide another copy to the Court [Doc. 54]. The Court received the new video on September 19, 2014. [Doc. 58.]

. . . probable cause"); *United States v. Jeffus,* 22 F.3d 554, 557 (4th Cir. 1994) (finding probable cause based on a positive alert).  In Lawson's affidavit, he asserts Tinka first alerted when she jumped into the passenger's seat.  [Doc. 47-2 ¶ 10.]  Lawson asserts she then proceeded around the car and alerted by the driver's side door and at the driver's seat.[6]  [*Id.* ¶¶ 11– 12.]  Plaintiff claims Tinka never alerted during the walk.  [Doc. 20 ¶ 23; *see also* Docs. 50-1 ¶ 3; 50-2 ¶ 3; 50-3 ¶ 3.]  The dash cam video provides no assistance in resolving this dispute.  Because of the angle of the video, the view of Tinka on the driver's side is completely blocked.  The Court can see Lawson stop by the driver's side door, but it cannot see whether Tinka alerted.  The video also shows Tinka jump into the driver's side door, but once inside she is again out of view.  Because there is a genuine issue of material fact as to whether Tinka alerted, thereby providing the officers probable cause to search inside the car, summary judgment is inappropriate with respect to this claim.  As this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow*, 457 U.S. at 800,  and its progeny is inappropriate as well.[7]

---

[6]Lawson claims there was probable cause for the officers to search the car because Tinka alerted three times during the open air sniff.  [Doc. 47-2 ¶ 13.]  Relying on *United States v. Christian*, 452 F. App'x 283, (4th Cir. 2011), Defendants argue Lawson's opinion regarding Tinka's alerts is entitled to deference because he is Tinka's handler.  [Doc. 52 at 4.] However, in *Christian*, the district court had held a suppression hearing and found the dog handler's testimony to be credible.  *Id*. at 286.  At this point, the Court does not have enough information to make a finding on Lawson's credibility.  Accordingly, Lawson's opinion is not entitled to deference.

[7]Defendants argue Lawson is entitled to summary judgment on the claims against him in his official capacity.  They assert that a claim against him is essentially a claim against the City.  [Doc. 47-1 at 13.]  Therefore, Lawson should be dismissed from the action under the same reasoning that the City should be dismissed.  [*Id.* at 14.] Defendants point to *Brandon v. Holt*, 469 U.S. 464 (1985), which cites *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  However, *Monell* does not hold that once a claim against a municipality is dismissed, all claims against employees in their

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. The Court recommends that the motion be (1) granted with respect to the City and the Department, but (2) denied with respect to Lawson.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 2, 2014
Greenville, South Carolina

---

official capacities are also dismissed. Instead, *Monell* makes clear that a municipality should not be liable for the torts of its employees. In this case, the Court recommends the City be dismissed because Plaintiff has not shown an official policy or custom was responsible for the violation of his constitutional rights. The same reasoning does not apply to Lawson in his official capacity; and, consequently, Lawson is not entitled to summary judgment in his official capacity.